# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE:<br><br>Rock N' Play Sleeper Marketing, Sales Practices and Products Liability Litigation,<br><br>Movant Shelsby & Leoni,<br><br>                  Movant. | Misc. No.:<br><br>Underlying Case No. 1:19-md-02903-GWC<br>(U.S. District Court for the Western District of New York) |

## THIRD-PARTY SHELSBY & LEONI'S MOTION TO QUASH SUBPOENA

Dated: January 30, 2024

**SHELSBY & LEONI**

*/s/Robert J. Leoni*
Robert J. Leoni (#2888)
221 Main Street
Wilmington, DE 19804
phone: (302) 995-6210
fax: (302) 995-6121
email: rleoni@mslde.com
*Attorneys for Third-party Shelsby & Leoni*

# **TABLE OF CONTENTS**

| | |
|---|---|
| I. INTRODUCTION | 4 |
| II. FACTUAL AND PROCEDURAL HISTORY | 5 |
| III. ARGUMENT | 8 |
|    A. The Subpoenaed Documents Are All Protected From Disclosure. | 8 |
|    B. The Subpoena is Unduly Burdensome. | 10 |
| IV. CONCLUSION | 12 |

**TABLE OF AUTHORITIES**

**Cases**

American Electric Power Company, Inc. v. United States, 191 F.R.D. 132, 136 (S.D.Oh. 1999) 12

American Standard Inc. v. Pfizer Inc., 828 F.2d 734 (Fed.Cir.1987)............................................. 12

Cytodyne Techs., Inc. v. Biogenic Techs., Inc., 216 F.R.D. 533, 535 (M.D.Fla. 2003) ............... 12

Pansy v. Borough of Stroudsburg, 23 F. 3d 772, 790 (3d. Cir. 1994)............................................ 9

R.D. v. Shohola Camp Ground & Resort, No. 3:16-CV-1056, 2017 WL 1550034, at *3 (M.D. Pa. May 1, 2017) ............................................................................................................................. 9

Rardon v. Falcon Safety Prod., Inc., No. 23-1594, 2023 WL 5347298, at *2 (3d Cir. Aug. 21, 2023) ........................................................................................................................................ 10

SEC v. TheStreet.com, 273 F.3d 222, 230 (2d Cir. 2001)............................................................... 9

Solarex Corp. v. Arco Solar, Inc., 121 F.R.D. 163, 179 (E.D.N.Y. 1988)..................................... 12

**Other Authorities**

Federal Practice and Procedure § 2463.1 (3d ed. 2023) .............................................................. 10

**Rules**

Fed. R. Civ. P. 45............................................................................................................................ 8

Fed. R. Civ. P. 26.......................................................................................................................... 10

**Regulations**

Safe Sleep for Babies Act of 2021, Public Law No: 117-126 (May 16, 2022)............................... 5

Pursuant to Federal Rule of Civil Procedure 45(d)(3), Movant Shelsby & Leoni, by and through its undersigned counsel, respectfully moves the Court to enter an order quashing the subpoena served upon it by Mattel, Inc. and Fisher-Price, Inc. on January 17, 2024.

I.   **INTRODUCTION**

Movant is a law firm representing as local counsel the estates of infants in personal injury and wrongful death lawsuits brought against Mattel, Inc. and its wholly owned subsidiary Fisher-Price, Inc. (collectively, "Fisher-Price"). Plaintiffs in these actions allege that the Fisher-Price Rock 'n Play Sleeper (the "RnP") caused the infants' injuries and/or deaths. The lawsuits are pending in Delaware Superior Court. Fisher-Price is defending many similar lawsuits across the country.

In addition to these personal injury suits, Fisher-Price is also facing a nationwide consumer class action venued in the Western District of New York. The class action is brought by purchasers of the RnP who were not injured but who suffered economic loss because they would not have purchased the product had they known of the danger. To be clear: the class action is totally separate from the personal injury cases. None of the personal injury plaintiffs are plaintiffs in the class action, and the class does not seek any personal injury or wrongful death damages.

Now, Fisher-Price has propounded a subpoena essentially demanding that Movant turn over all of its records from the state court personal injury and wrongful death lawsuits for use in the federal consumer class action litigation. The subpoena specifies that compliance must take place in Wilmington, Delaware, and thus, this Court has jurisdiction over issues arising from the subpoena. Movants respectfully request that the Court quash the subpoena for two reasons. First, as Fisher-Price knows, the requested documents contain highly sensitive medical information and are all subject to a Protective Order prohibiting their disclosure—a Protective Order that Fisher-

Price itself negotiated and agreed to. Second, the subpoena is overbroad and compliance would be unreasonably burdensome for the Movant. Under Rule 45, both grounds independently warrant quashing the subpoena.

## II.     FACTUAL AND PROCEDURAL HISTORY

For over 10 years, Fisher-Price sold a product, the RnP, which is deadly to infants. Fisher-Price voluntarily recalled the RnP in 2019 after the United States Consumer Product Safety Commission concluded that dozens of infants had died from "roll[ing] from their back to their stomach or side while unrestrained, or under other circumstances" while in a RnP sleeper.[1] As recently as this year, the CPSC published a press release stating that "tragedies mount" from the RnP sleeper, Fisher-Price's "recall was not good enough to remove these products from homes," and "No one at Fisher-Price has yet faced real accountability" for this deadly product.[2] Fisher-Price recently had to re-announce its recall, and in doing so acknowledged that "[a]pproximately 100 deaths have reportedly occurred while infants were in the products."[3] Inclined sleeper products like the RnP are now banned nationwide by the Safe Sleep for Babies Act of 2021, Public Law No: 117-126 (May 16, 2022).

---

[1] See "CPSC ALERT: CPSC and Fisher-Price Warn Consumers About Fisher-Price Rock 'N Play Due to Reports of Death When Infants Roll Over in the Product," United States Consumer Product Safety Commission, April 5, 2019, available at https://www.cpsc.gov/Newsroom/News-Releases/2019/CPSC-ALERT-CPSC-and-Fisher-Price-Warn-Consumers-About-Fisher-Price-Rock-N-Play-Due-to-Reports-of-Death-When-Infants-Roll-Over-in-the-Product

[2] See "Eight New Deaths in Rock 'n Play as Tragedies Mount in Fisher-Price Products; CPSC Working on a Rule that Could Prevent the Next Wave of Deaths," United States Consumer Product Safety Commission, Jan. 9, 2023, available at https://www.cpsc.gov/About-CPSC/Commissioner/Richard-Trumka/Statement/Eight-New-Deaths-in-Rock-n-Play-as-Tragedies-Mount-in-Fisher-Price-Products-CPSC-Working-on-a-Rule-that-Could-Prevent-the-Next-Wave-of-Deaths

[3] See "Fisher-Price Reannounces Recall of 4.7 Million Rock 'n Play Sleepers; At Least Eight Deaths Occurred After Recall," United States Consumer Product Safety Commission, Jan. 9 2023, available at https://www.cpsc.gov/Recalls/2023/Fisher-Price-Reannounces-Recall-of-4-7-Million-Rock-n-Play-Sleepers-At-Least-Eight-Deaths-Occurred-After-Recall#:~:text=Fisher%2DPrice%20Reannounces%20Recall%20of,Occurred%20After%20Recall%20%7C%20CPSC.gov

Wrongful death and personal injury lawsuits have been filed against Fisher-Price across the country on behalf of infants who died or were injured while using the RnP. Movant is a law firm representing as local counsel the estates of 10 deceased infants, as well as five infants who were catastrophically injured. *See* Ex. A (Subpoena) at 1-3 (listing the 15 lawsuits). These lawsuits are pending in the Superior Court of Delaware. The lawsuits allege that Fisher-Price is liable for the infants' injuries under strict liability, negligence, warranty, and fraud-based theories. As part of the discovery process, the parties entered into a strict Protective Order that applies to each of the cases, which is attached as Exhibit B. The scope of the Protective Order was the subject of both negotiation and motion practice. The final Protective Order resulted from a court order resolving the outstanding disputed issues in favor of Fisher-Price. The Protective Order provides: "Except as ordered by the Court, all Litigation Materials shall be used only in connection with the presently pending, above-captioned Actions and any subsequently filed actions brought against the same defendants in this Court, provided that the subsequent cases are deemed related under the Superior Court Rules and are subject to this Protective Order." *See* Ex. B (Protective Order) at ¶ 10.

Entirely separate from these state court personal injury and wrongful death proceedings, Fisher-Price is also facing a nationwide class action brought by purchasers of the RnP. The Consolidated Amended Complaint in that action (the "Class Action Complaint") is attached as Exhibit C. The putative class includes purchasers of the product—not infants who were injured or killed, as in the personal injury suits. *See* Ex. C (Class Action Complaint) at ¶ 10. The gravamen of the Class Action Complaint is that the class members would not have purchased the RnP had Fisher-Price told them the truth about the product's inherent dangerousness. *See id.* at ¶¶ 1–5. Unlike the state court actions, the Class Action Complaint makes clear that "Plaintiffs do not seek

damages for any personal injury or wrongful death claims." *Id.* at ¶ 272. Movant does not represent any of the named plaintiffs in the consumer class action.

On January 31, 2024, Fisher-Price served a subpoena on Movant as part of the consumer class action, which is attached as Exhibit A. The subpoena demands that Movant turn over all documents from the personal injury lawsuits relating to the infants' deaths, including highly sensitive medical records and other materials covered by the parties' agreed-upon Protective Order.[4] Specifically, the subpoena requests:

> Any and all documents in [Movant's] possession, custody, or control regarding the Infant's death that have been produced by (1) [Movant] and/or any other counsel of record in the above listed cases; and/or (2) produced by any Third-Party in the above referenced case(s) . . . [including] All of the Infant's medical records . . . All records regarding the Infant's parent(s) and/or legal guardian(s) . . . All records from any local and/or state police/sheriff's department that investigated the Infant's death . . . [and] All records from any local and/or state department of children and family services (or local or state equivalent) that investigated the infant's death.

*See* Ex. A (Subpoena) at 3–4.[5] Not only are these records all protected from disclosure by the parties' agreed-upon Protective Order, they also include highly sensitive and HIPPA-protected medical information, protected attorney-client communications and work product, and other material protected from disclosure. For example, the request covers (1) the totality of the infants' medical records, (2) the infants' parents' medical records, (3) labor and delivery records, (4) autopsy reports, and (5) child protective services investigation records.

---

[4] Fisher-Price did not meet and confer with Movant before subpoenaing these records, as is contemplated by the parties' Protective Order. The Order provides, "Certain PROTECTED DATA [defined to include medical records] may compel alternative or additional protections beyond those afforded HIGHLY CONFIDENTIAL – ATTORNEY'S EYES ONLY material, in which event the parties shall meet and confer in good faith and, if unsuccessful, shall move the Court for appropriate relief." *See* Ex. B (Protective Order) at ¶ 5.

[5] The Subpoena requests only documents "regarding the Infant's death" from the 15 cases in which Movant serves as local counsel. However, five of the cases are personal injury lawsuits in which the infant plaintiffs are still alive, and thus, there are no responsive documents from these cases.

Many of the records are not in Movant's possession, custody, or control, because Movant serves only as local counsel in the matters and does not maintain all of the produced discovery. Moreover, the requested materials are all equally available to Fisher-Price and its own counsel in the personal injury lawsuits. Fisher-Price is a party in each of these lawsuits and was provided with all the discovery in those cases. The reason Fisher-Price is requesting these records via subpoena is because Fisher-Price knows that the records in its possession cannot be used outside of the personal injury cases due to the Protective Order that Fisher-Price agreed to and the highly sensitive nature of these documents.

### III.     ARGUMENT

Under Rule 45, "the district where compliance is required *must* quash or modify a subpoena that . . . (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or (iv) subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A)(iii)-(iv) (emphasis added). The subpoena at issue here specifies that compliance must occur in Wilmington, Delaware. *See* cover page to Ex. A (Subpoena). Thus, the Motion is properly brought before this Court. The subpoena must be quashed because every requested document is shielded from disclosure by a Protective Order that Fisher-Price agreed to, as well as other privileges and protections, and because complying with the subpoena would be unduly burdensome for the Movant.

####        A.     The Subpoenaed Documents Are All Protected From Disclosure.

The subpoena must be quashed because the requested documents are all protected from disclosure. *See* Fed. R. Civ. P. 45(d)(3)(A)(iii) (the Court *must* quash or modify a subpoena that "requires disclosure of privileged or other protected matter, if no exception or waiver applies.").

Fisher-Price already has in its possession all of the requested documents, which were produced in the personal injury and wrongful death lawsuits. The reason Fisher-Price is

subpoenaing the documents is because Fisher-Price knows that it is prohibited from simply using the documents in the consumer class action due to the parties' Protective Order and the highly sensitive nature of these documents, most of which are also HIPPA-protected.

Fisher-Price could have gone before the state court overseeing the personal injury lawsuits and requested a modification of the Protective Order, which Plaintiffs would have opposed given the sensitive and confidential nature of the documents. *See R.D. v. Shohola Camp Ground & Resort*, No. 3:16-CV-1056, 2017 WL 1550034, at *3 (M.D. Pa. May 1, 2017) (modifying subpoena to exclude medical information of non-parties "which is deeply personal in nature."). But instead, Fisher-Price is attempting to circumvent the state court's authority via this subpoena. Not only is this procedurally improper, it is also substantively unfair. As the Second Circuit has explained, it is "presumptively unfair for courts to modify protective orders which assure confidentiality and upon which the parties have reasonably relied . . . We have been hesitant, therefore, to permit modifications of protective orders in part because such modifications unfairly disturb the legitimate expectations of the parties." *SEC v. TheStreet.com*, 273 F.3d 222, 230 (2d Cir. 2001); *see also Pansy v. Borough of Stroudsburg*, 23 F. 3d 772, 790 (3d. Cir. 1994) ("[O]ne of the factors the court should consider in determining whether to modify the order is the reliance by the original parties on the confidentiality order.").

It is particularly unfair for Fisher-Price—a party to the personal injury actions which negotiated and agreed to the Protective Order—to now demand that the Protective Order be circumvented for its benefit in an unrelated case. The parties negotiated and agreed to the Protective Order precisely because they desired to protect their confidential documents from disclosure. Fisher-Price insisted on a strict Protective Order because it wanted to keep its highly sensitive trade secrets, financial information, and other internal documents private. Likewise,

Plaintiffs want to keep private their HIPPA-protected medical records and other highly personal information relating to the death or injury of infants.

Fisher-Price should not be permitted to reap the benefits of the parties' agreement while at the same time seeking to violate the agreement to Plaintiffs' detriment by disseminating Plaintiffs' private documents in an unrelated case. Because the requested documents are all protected from disclosure by the Protective Order and contain sensitive medical information, the subpoena must be quashed. *See* Fed. R. Civ. P. 45(d)(3)(A)(iii).

### B. The Subpoena is Unduly Burdensome.

The subpoena must also be quashed because it is unduly burdensome. When assessing undue burden, the Court must consider the following six factors: "relevance, the need for the information requested, whether the information can be obtained by other means, burdens the subpoena may impose, the status of the recipient as a non-party, and the costs of compliance." *Rardon v. Falcon Safety Prod., Inc.*, No. 23-1594, 2023 WL 5347298, at *2 (3d Cir. Aug. 21, 2023) (collecting cases). At bottom, this analysis "calls upon the trial court to consider whether the information is necessary and whether it is available from any other source." *Id.* (quoting 9A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 2463.1 (3d ed. 2023)). Here, all the undue burden factors support quashing the subpoena.

***Relevance.*** The requested documents have no relevance to the consumer class action, and thus are not subject to disclosure. *See* Fed. R. Civ. P. 26(b); *Rardon*, 2023 WL 5347298 at *2. The death or injury of these 15 infants does not bear on any claim or defense in the consumer class action, nor are these infant's private medical records likely to lead to the discovery of any admissible information. The crux of the class action is whether Fisher-Price deceived purchasers about the risks of the RnP product. It has nothing whatsoever to do with whether the RnP caused

the death or injury sustained by these particular 15 infants. Even if Fisher-Price could show that all 15 infants were injured by other causes, this would not prove one way or the other whether the RnP is more dangerous than Fisher-Price represented to consumers.

Put differently, the class action plaintiffs will have to prove their case by showing that (1) Fisher-Price misrepresented the RnP product, and (2) the misrepresentation was material to the class members' purchasing decision. Fisher-Price presumably will argue that it did not misrepresent the RnP and/or that its misrepresentations were not material to the consumers' purchasing decision. But because Fisher-Price made no representations to consumers about the specific circumstances surrounding these 15 infants, documents related to these 15 infants' death or injury are irrelevant to any issue in the case. This is especially true because, by Fisher-Price's own public admission, at least 90 other infant deaths have been linked to the RnP.[6]

*Necessity.* There is no need for the information requested, all of which relates to the private information of 15 infants who are not parties to the consumer class action or connected to that litigation in any way and is irrelevant for the reasons discussed above.

*Burden.* Fisher-Price's request is plainly overbroad, in that it is requesting virtually every case-specific document produced in 15 separate lawsuits—not only by Movants' clients, but by defendants (including Fisher-Price itself) and third parties. As discussed *supra* in Section III.A, the requested information is all subject to a Protective Order. Thus, providing it to Fisher-Price would require obtaining an order from the court in which the Protective Order was entered. It would also require substantial redactions and/or logging of highly sensitive medical information,

---

[6] *See* "Fisher-Price Reannounces Recall of 4.7 Million Rock 'n Play Sleepers; At Least Eight Deaths Occurred After Recall," United States Consumer Product Safety Commission, Jan. 9 2023, *available at* https://www.cpsc.gov/Recalls/2023/Fisher-Price-Reannounces-Recall-of-4-7-Million-Rock-n-Play-Sleepers-At-Least-Eight-Deaths-Occurred-After-Recall#:~:text=Fisher%2DPrice%20Reannounces%20Recall%20of,Occurred%20After%20Recall%20%7C%20CPSC.gov

personally identifiable information, and other information protected from disclosure. There is simply no reason why Fisher-Price should be entitled to burden a non-party with combing through the discovery from 15 different lawsuits for Fisher-Price's benefit in an unrelated class action.

***Availability by other means.*** Information regarding the safety of RnP products can be obtained far more readily and comprehensively from other sources, including published reports by the CPSC and other public entities, Fisher-Price's own internal documents, and expert reports by Fisher-Price's retained experts.

***Status as a Non-Party.*** Movants and their clients are not parties to the consumer fraud class action, which weighs heavily against disclosure. *See American Standard Inc. v. Pfizer Inc.,* 828 F.2d 734 (Fed.Cir.1987) (affirming district court's restriction of discovery where non-party status "weighted against disclosure"); *Cytodyne Techs., Inc. v. Biogenic Techs., Inc.,* 216 F.R.D. 533, 535 (M.D.Fla. 2003) (noting that non-party status is a significant factor weighing against disclosure); *American Electric Power Company, Inc. v. United States*, 191 F.R.D. 132, 136 (S.D.Oh. 1999) (same); *Solarex Corp. v. Arco Solar, Inc.*, 121 F.R.D. 163, 179 (E.D.N.Y. 1988).

***Cost of Compliance.*** Given the sweeping nature of the subpoena, compliance would be costly as it would require substantial document review and redactions and logging of sensitive medical information, and personally identifying information, none of which is remotely relevant to the consumer class action in which these documents are now being requested.

### IV.  CONCLUSION

For the reasons discussed above, Movant respectfully asks this Court to quash the subpoena.

**SHELSBY & LEONI**

***/s/Robert J. Leoni***
Robert J. Leoni (#2888)
221 Main Street
Wilmington, DE 19804
phone: (302) 995-6210
fax: (302) 995-6121
email: rleoni@mslde.com
*Attorneys for Third-party Shelsby & Leoni*